He's all right. Here you hear you hear you. Honorable second condition. Now back in session. The Honorable Michael J. Reside Christmas City. Sue 5 two. Thank you. Good morning, Your Honor. Please support Darren Miller on behalf of the defendant's Nathaniel Legore and I'm with the Office of State Appellate Defender. This is our day for First District people. Your Honor, just a very brief background. The defendant was found guilty after a jury trial of killing his father Guillermo and on direct appeal. This court recognized that the evidence was quote entirely circumstantial and quote far from overwhelming and at that trial the defense counsel wanted to argue that Phyllis Curry was Guillermo's living girlfriend at the time was the true killer and she was prohibited from doing so. And we're not alleging that that's near at this point. Right now. We're here on an appeal from a summary dismissal of Mr. Legore's post-conviction petition and our position is that the petition sets forth a just or an arguable claim of ineffective assistance of trial counsel. Well, Judge Bridges was consistent in his rulings that didn't allow the defense to do that, but also didn't allow the state to put in the evidence of Mr. Bade who testified that the girlfriend was at work the whole time? Correct. Yeah. Which one was the kid first? As far as I believe the defendant was first barred. That's my recollection of that. At any rate, the post-conviction petition here essentially went to the trial counsel's rejected strategy. That is Phyllis Curry was a true killer. And in the petition, the defendant alleged, the pro se defendant alleged that Phyllis Curry was the initial suspect admitted to the police that she was the beneficiary of Guillermo's life insurance policy and that she was aware that Guillermo had cheated on her. And also that prior to calling the police, because she was the one who found Guillermo's body, that prior to calling the police, she phoned a man to the house. And on appeal, we're maintaining that this presents an arguable claim of ineffective assistance of counsel that given the fact that trial counsel had an admitted strategy to argue that Phyllis was the real killer, that this isn't a case of a strategic decision to not present this evidence, and that trial counsel should have presented this evidence or further investigated the evidence. And if you look at this case, again, this court's set of evidence against Mr. LaGuerra was entirely circumstantial and far from overwhelming. And it was really just a case of motive and opportunity. And the state was able to present motive and opportunity against the defendant, but... Well, they also have some testimony of the person making the phone call from Great Lakes, correct? Correct. And then a person wearing a similar jacket. Correct. That all goes to the circumstantial evidence, yes. He makes these allegations, but what's the underlying affidavits or supporting evidence for it? Anything? Yeah. Your Honor, well... He didn't say, hey, I'm in prison and I can't give these things. Yeah, he didn't verify, do the verification that swears to the allegations in the petition. And yeah, there were no evidentiary affidavits or evidence attached to the petition. And isn't that the case then for every prisoner to be able to say, actually, well, I don't have supporting affidavits or police reports or whatever, because I'm in prison. Right. Yeah. I mean, I understand what you're saying, Your Honor. I mean, post-conviction petitions are almost always filed by prisoners, and if that in and of itself is an excuse, that's probably not adequate. But when you look at this petition as a whole, and if you look at it, I believe the cases were Delton and Allen. Well, first of all, if you can look at it as a whole, and he did attach an explanation, which whether it's adequate or not, it still did at least comply with 122-2's requirement that you either support affidavits records or other evidence or explain why it's not attached. So he did put an explanation. It may not be the best explanation. But when you look at the petition as a whole, look at the type of evidence that he is required to obtain, it's just not realistic and it's a reasonable burden. Looking at the record, the state moved to bar evidence or arguments alluding to Curry, correct? Correct. So there's a strong inference that trial counsel was effective, correct, without some showing of ineffectiveness? Well, I mean, I think the burden here is that there just has to be an arguable claim. Okay, but based upon this record, what's arguable? I mean, if the attorney was aware that the standard for offering evidence of an alternative suspect is what? Beyond a mere suspicion, correct? Yeah, I believe if you look. It has to be evidence beyond a mere suspicion. There has to be some evidence. Yeah, it just has to be relevant under People v. Beamon. It has to be relevant and just not remote. Right, not remote and beyond a mere suspicion. Correct. So. So and yeah, and that's why when you look at what happened at trial, the trial attorney presented no evidence regarding Ms. Curry's motive. So yeah, there was some evidence as to opportunity. She's a living girlfriend. She found the body, but there was no evidence presented to motive. What's in the post-conviction petition goes directly to motive, that she had a life insurance policy.  put in an argument that she possessed some discovery that Guillermo had cheated on her multiple times. And I believe she had cross-examined a couple of witnesses to that effect, but there was no evidence. What's in the petition is that Phyllis was aware of the multiple incidences of cheating. So that awareness plus the life insurance policy provides a motive. And again, we're at the first stage and it just has to be, it's a very little burden. In fact, I don't even believe the state even argues that this is not an effective assistance to counsel, assuming that the attachments substantiate the allegations. So I think clearly, you know, you have effective counsel who would have followed up on this evidence and given that it's just a case of motive and opportunity for the defendant, motive and opportunity for Mrs. Curry. It's a closely balanced prejudicial case and there's an arguable prejudice here. The defendant doesn't really say how he came to get this knowledge, correct? I mean, it just says that she admitted to the police that she knew the victim was cheating on her and she was on the deceased life insurance policy. Yeah, I haven't seen the petition in quite a while, but my notes, my understanding was that this information was obtained from his seeing the police reports. Right, but he doesn't have to say that. I mean, is that an inference? He has to say, doesn't he have to say that in order to get around, you know, to satisfy the explanation as to why he doesn't have these records now? Well, I mean, in a perfect world, and again, I believe that if he didn't say it was at least strongly applied in the petition, but again, he's a pro se petitioner and the goal here is to ascertain justice. And all we're asking for is for this to move to another stage for an attorney to follow up on these allegations. And if they turn out to be garbage, they'll be promptly disposed of. What you're saying is the defendant can say whatever he wants, we give him an attorney and then the attorney can follow up. And if it's garbage, we'll just knock it out. It's kind of like doing away with the first stage is what you're saying. No, I'm absolutely not saying that. I think these are very fact specific. And when you look at this case is quite similar to Beeman as far as an alternative suspect. And you have evidence of motive and opportunity. It's very similar. And you also said suppression of favorable evidence by the state. You don't have any such allegation there, do you? No, no, no. And it's not on all squares, but the point is Beeman was a third stage hearing where the Illinois Supreme Court actually reversed his conviction based on undisclosed evidence. So, I mean, this is a very serious allegations here that the trial counsel didn't follow up on crucial evidence of Ms. Curry's motive. And I'm not arguing that in all cases, a defendant just has to put in his petition. He's in prison and that, you know, I think what you have to do is look at the facts, the type of evidence that he's expected to get and what's realistic of him to attach the evidence or affidavits to the petition. And here he was specifically told by his attorney, and I believe with the agreement of the court, that, no, you're not entitled to the police reports. So it's perfectly reasonable for a pro se defendant to be thinking, well, my attorney and the court told me I'm not entitled to police reports. I don't have police reports. What's the point? It's totally futile to go seek out the reports. And, you know, obviously there's case law saying it's not reasonable to get an affidavit from your attorney, admitting that he or she is ineffective. And it certainly wouldn't be reasonable to expect him to get an affidavit from Ms. Curry, the person he's accused of being the alternative killer. So I think... What about the life insurance policy? I mean, that would have been a nice piece of motive evidence. And he wasn't told that he couldn't get that by anybody, correct? No, but according to... It would have been in the police report, because I believe he alleged that it was in the report. And how would he get it? I mean, a pro se defendant accused of killing Guillermo writing an insurance company for the insurance policy. And first of all, he doesn't even know what company. What's he going to send out letters to every insurance company in the state and say, hey, I'm a convicted killer. Please give me information on the life insurance policy. Again, I don't think that's a reasonable expectation, particularly where this is easily verified just by looking at the police reports to see if she did make that admission to the police. When you have the state basically making a proffer that this Dennis Bade, the other employee at the middle school with Ms. Curry, that he worked with her at the middle school, that he saw her there all day on March 2nd, and he specifically saw her there at the end of the day on March 2nd. How would the result, and significance, it was circumstantial, but significant circumstantial evidence. How would the results have been different? Well, again, Your Honor, this course was far from overwhelming evidence. So that's the words, not just my words, that's the words of this court. It was my opinion. Okay. So, but that was in the opinion. It was far from overwhelming evidence. And I mean, that is just, we don't know that she was not tested through cross-examination. We don't know what that testimony would have said. There was also a witness who testified in the defendant's favor at trial too, and insurance is not required to believe that witness either. So, and again, we're just at the stage where it just has to be an arguable claim, just a gist. We're not saying that this is the be-all end-all. We're not asking for a new trial at this point. We're just asking this to proceed, to have counsel appointed, and to follow up on these claims. And, um... What about the claim that the victim's house was broken into the day before the murder? Well, I think, and I'm not sure. I mean, there were other allegations that there were other girlfriends apparently, and there were some rumors, if there's a report that people suspected one of Guillermo's girlfriends or someone associated with them probably committed the murder. So that could have been related to that. Who knows? I mean, it could have been Phyllis trying to set something up to make, to throw off the scent. No one knows at this point. And again, that's why just asking to find a gist of an argument here of ineffective assistance and to move it so an attorney can further look into these claims. And if there's nothing to them, there's nothing to them. Would it be beneficial if there was a rule change where appellate counsel would be furnished with all of the discovery trial counsel had at his or her disposal in order to bear an appeal? Sure, that would be, we would love that. That would be a great recommendation. Why hasn't anybody ever asked for that? Especially in this day and age where we have DNA testing and post-conviction proceedings based on newly discovered evidence. Yeah, that's a good question, Your Honor. I don't have the answer to that. It might eliminate some stages of appeal. Yeah, and possibly limit waste on court resources, too. If there are no other questions, I'll take the rebuttal. Thank you, counsel. You will have time for rebuttal, Mr. Stevens, when you proceed. Good morning, Your Honors. As a preliminary matter, I have some additional authority I wanted to cite. I believe that Mr. Mangan informed you of that informally yesterday. I have the formal copies here. Was opposing counsel informed of that? I'm sorry? Was opposing counsel informed of that? Yes, I am. Okay, that motion will be granted. Right, and he mentioned he may have a case as well, and I have no objection to his citing anything additional. Right there. Before I get started, I want you to the substance of it, Justice Burkett, you just said something about trial counsel has, as a practical matter, and correct me if I'm wrong, there wouldn't be any, since appellate counsel is of counsel to trial counsel, why couldn't they just get that from them directly? They would have all the files available of the trial counsel, but they don't. I mean, I'm just asking because it's... Ordinarily, that's not the case. In my experience, it has not been the case. But I'm not aware of it, and I'm not aware that the state would ever object if they wanted to do that. Well, I think trial counsel might object if there's issues in their, especially if it's an issue of ineffective assistance of counsel, but we're getting off on a tangent, so. Yeah, right, and you're right, that's a side issue. Okay. Counsel, let me just start off by, you absolutely argued that there's an inference in this postconviction petition that the information that the defendant had came from his viewing the police reports. Do you see that as an inference? It's just an intimation. It's what? It's just an intimation of that being the case. You don't know where the defendant got this information. You don't know the purported source of the information. And you don't know, really, how he tried to get that information. His only explanation is that, I'm in jail and I can't get it. Well, that's... Most PCs are filed by people who are in jail, so that's the universal solvent argument. If I'm in jail, I can't do anything, I'm helpless. That's not what's anticipated under the Postconviction Act. You have to do something. Now, I realize that in recent years there has been some move to maybe give defense a little more leeway than they have in the past. And I did suggest that a rational thing to suggest as a standard is that the defendant at least show his work, show why something is not available. If the defendant, a defendant who is truly innocent, is very motivated, will they not write letters? We could see copies of the letters that he wrote. Those would be to the police. Can I have police reports? Those would be to counsel. Can I have my discovery? Those would be to the court.  And responses back. With regard to the insurance policy that was mentioned, he would be a family member. The defense says, well, how would he know which company would have it? Well, when you conjure out of nowhere an insurance company, I guess that is kind of hard to say. But again, that would be a question, a letter to his defense counsel. Did you investigate this? Did you, things like that is what I'm suggesting. It was also very unusual, wasn't it, that the state did not call Phyllis? She found the body. I have no knowledge of why that would be the case. Would you agree it's unusual? Usually, in a murder case, you call the person and found the body. I just absolutely have no, I'd say, yeah, it's a pretty common thing to do. But if she didn't add anything beyond, I came to the door and I saw. You were dead. The state knew from the record in this case. It's clear the state was aware that the defendant may point the finger at Phyllis because they found the most limited preclude him from making that argument, correct? Because there was no evidence of that. As you discussed in Beeman, there was no, there was not the sufficient connection that would allow him to argue that. I point out that despite that fact, defense counsel still managed to make that implication in very close proximity. Defense counsel questioned the absence of Curry and what her actions were, why she had no blood on her clothes, which was part of the evidence. Then the defense went on to suggest that someone else could have been present or there could have been a domestic fight or a drug deal gone bad or a burglary or a robbery. So the substantial impact of arguing that Curry was a suspect was actually argued. Really from the defense point of view, who cares if it's Phyllis or not? That might seem like the most reasonable subject, but if you could find any other reasonable subject, that would have been just as good. It's not defense counsel's job to show that Phyllis committed the crime. It's the defense counsel's job to show that there's a reasonable doubt that the defendant committed the crime. So I do think that this is, that approach is suggested by Delton, which the approach of requiring some explanation to, as it were, show your work. Because it said the defendant made, in Delton, made the report of police misconduct. He would have had his reports, that sort of thing. With regard to the issue of discovery, I feel that that is a bit of a red herring because we were fortunate enough to have a pretty expansive explanation from Ms. Vanek as to what she did, she and her co-counsel did, as far as explaining what the state's discovery was. They spent many hours with him. He read over grand jury minutes. They went over the documents. They viewed video. Someone, even if you accept the premise that he was told he couldn't have it and so he believed he could never have it, which I don't accept, he would have been able, I would think, to have specific information to more reasonably, more specifically explain where those sources of information were that there was, you know, an officer said in his police report, not necessarily giving names, as again, I'm saying, show your work. So you're saying, if he had even said, I think I remember seeing in the police reports that there's an insurance policy or that the police officer said this? It's a possibility. I mean, it's going to be a quantum of evidence and that's going to be your job, of course, comparing against the standards for what would be the evidence that, what would be a sufficient explanation for why he didn't have it. I can't tell you that. That's your job. I would say a further thing that the nature of the evidence is even, excuse me, even aside from the establishment of the evidence and that basis, all the defense, the various things that Phyllis was an initial suspect, I don't think that's terribly significant. Whoever finds a body is an initial suspect, really. Jeez, live with them. That's going to make her an initial suspect. That really doesn't mean anything on its own. If she knew Guillermo was cheating on her, possibly that's a motive. If she had, you know, Guillermo's life insurance. Does motive alone meet the Beeman standard of showing that someone, there's some reason to believe that someone else is the alternate killer? I don't think so. The defense did cite Allen. We haven't talked about it much and you can talk about it or not as you wish. I don't think it applies because basically it's a procedural case. Are you arguing that if there was evidence presented at trial that the girlfriend knew he was cheating on her and that she was the beneficiary of his life insurance policy, that that evidence would not have been admissible? That the defendant under those circumstances could not point the finger at her? I don't think so. Now this is a situation where we pointed out in our earlier opinion that there were only two family members in the area, girlfriend, defendant. There was no forced entry. These are the things that we looked at to determine the circumstantial evidence and the quantum of that evidence. No, I'm not really prepared to answer that. I'm sorry. I didn't really think of it in terms of Beeman. Defense counsel says I ignored Beeman. I didn't even make any argument about that. My point of view is if there's so little evidence, I can't even talk about whether or not this is evidence that would show motive two, that would show that she was an alternative suspect in the killing. Getting back to Allen, I think it's just a case about procedure. There was an affidavit in that case. It was an affidavit which made a very definite and specific statement as to the situation there. It would have been exonerating. It was captioned, at least, an affidavit. It was purported to be signed. And I think a rather significant thing is that there were fingerprints which were attempted to be put on it, which, at least in the defendant's mind, the court could have found that that was something that could stand in the stead of a notarization. You could find that those were Langford's fingerprints. As far as Wallace goes, the main value is to say just that. In paragraph 27 of Wallace, it says, it's a procedural case and that they do not believe that this was an intent to radically change the rest of post-conviction law. The only other thing I would point out is something which has been pointed out, which is that Defense Counsel did move to keep out testimony of, I think, Mr. Bade, who would have said where Ms. Curry was. During the day, and I think that that does bespeak a familiarity with the issue of her viability as an alternative suspect in the killer. So, in summary, if this is all you need, what he has said here, to get to second stage, then anybody can get to second stage by saying, I believe. I believe there's evidence out there. If there are no more questions, thank you very much. Mr. Miller, who are you? I do think that if the alleged evidence were proven a child, that would be significant evidence. The post-conviction petition alleged that Phyllis was the initial suspect, was the beneficiary of his life insurance policy, was aware that Guillermo had been cheating on her, and inexplicably phoned some unknown man to the scene of the crime before even contacting the police, which is something that I can't imagine why anyone would do if you found out. But we don't know any of those things to be true, right? Correct, and that's the purpose of setting this for second stage proceedings. The merits of all this can be ascertained and further investigated. If the police reports indeed do show all this, this is certainly the type of evidence that warrants further investigation. Given Beeman, I mean, Beeman's post-conviction petition was denied by the trial court. We don't want to be in a situation where a potentially innocent man is imprisoned here just because of some technical missing things from the petition. Again, if you look at some of the courts, which would be Delton and Allen, when you can easily infer an explanation from the body of the petition and why documentation wouldn't be attached, there's no requirement for documentation. That's an exception to 122-2's requirement. Even if he offered no explanation that he was in prison, even without an explanation, that's an exception. And it's also an exception if documentation places an unreasonable burden on the petitioner and opposing counsel argues that he could have gotten life insurance information from the family. Who knows what family member has this information or why a family member if my client's sitting in prison convicted of murdering Guillermo, why any family member would give him that information. It's just not reasonable. It's not a reasonable expectation. How hard is it to send a letter to your defense attorney saying, I believe that reports indicate these things. Either can you send me the reports or send me a letter saying that the reports say that, even if I can't have them. I mean, the defendant knew that the attorney would share information from those reports with him based upon all the stuff. Well, the defense attorney had already shared his counsel argument. They went over the reports together, which our position is that just gives more merit to the petition, that he had all this information discussed with him with the attorney. He's just not able Well, he could have put in his petition that he had requested this information from his attorney, and that request was denied. I believe within the petition, there was if I'm recalling correctly, there was a discussion of the steps he went through to try and, that there was a dispute about the police reports and his ability to get them tendered. I'm sorry, Your Honor, I don't have a copy of the Petitioner has tried to obtain the evidence to support these claims, but due to his incarceration, he is unable to receive it, therefore stipulates Right, right. That's the attachment to it. I believe within the body of the petition, he discusses what went on as far as trying to ascertain. Beyond that, it's readily apparent in the record that he had been discussing the police reports with his attorney, but the attorney refused to tender them to him, and the court agreed with that decision, which again, if the attorney in the court already told him, hey, you're not entitled to this, why would a reasonable person write his attorney again asking for the same thing? And as counsel noted, the courts have been tending to excuse pro se petitioners from not being perfect in these situations, and I'm not looking for any general rule or any general exception to 122's requirement, just under the specific facts of this case, you can easily infer an explanation as to why this isn't attached, and we're dealing with a pro se defendant convicted of a very serious crime, I believe 55 years of prison, and it does not seem unreasonable to ask just this matter of advance for an attorney to further investigate, so if there are no other questions, I'd ask that you vacate the summary dismissal order and remand for further proceedings on the second stage. Thank you. The court thanks the attorneys for their arguments here today, and these will be taken under advisement, and we are adjourned.